IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Demount Alston,<br>Petitioner, | )<br>)<br>) |
| v. | )      1:19cv996 (LMB/IDD) |
| Tracy S. Ray, Warden,<br>Respondent. | )<br>)<br>) |

MEMORANDUM OPINION

Demount Alston ("Alston" or "petitioner"), a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the validity of his January 17, 2017 convictions in the Circuit Court of the City of Hampton, Virginia for aggravated malicious wounding, robbery, shooting into an occupied vehicle, possession of a firearm after having been previously convicted of a felony, and two counts of use of a firearm during the commission of a felony. Case Nos. CR16-653-00 through -05. [Dkt. No. 1]. Respondent, Tracy S. Wray ("Wray" or "respondent"), has filed a motion to dismiss and Rule 5 answer, along with a supporting brief. [Dkt. Nos. 11-13]. Alston received the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and has filed an opposition to the Respondent's motion. [Dkt. Nos. 31, 36-37]. For the reasons that follow, the Respondent's motion to dismiss will be granted.

**I. Background**

On November 2, 2016, Alston was found guilty in a bench trial of aggravated malicious wounding, possession of a firearm by a non-violent felon, two counts of using a firearm in the commission of a felony, robbery, and maliciously discharging a firearm at a vehicle. (Rec. at 79-80). He was sentenced on January 17, 2017 to twenty years in prison for malicious wounding

and for the robbery, two years for possession of a firearm by a non-violent felon, three years for his first use of a firearm conviction and five years for the second use of a firearm conviction, and ten years for malicious shooting. (Man. Rec. at 83-85). After suspending five years of the robbery sentence and another five years of the malicious wounding sentence, the court ran both concurrent with each other, and also imposed the malicious shooting concurrent with the robbery and malicious wounding sentences, leaving Alston with a total sentence of twenty-five years' incarceration. Judgment was entered on January 17, 2017.

Alston filed a petition for appeal in the Court of Appeals challenging the sufficiency of the evidence. A judge of the Court of Appeals denied his petition on September 11, 2017, and that decision was adopted by a three-judge panel on December 20, 2017. Alston v. Commonwealth, Record No. 0134-17-1. The Court of Appeals of Virginia summarized the evidence presented at trial as follows:

> [T]he evidence established that Sam Sharpe, Jr., had purchased marijuana from appellant for about one and one-half years. In mid-January 2016, appellant twice failed to meet Sharpe as arranged. Appellant later telephoned Sharpe and said he did not want to see him again because Sharpe "was playing around with him." Sharpe had met Daquan Burrell, whom he knew only as "Little Black," through appellant and had known Burrell for about five months. On January 13, 2016, Burrell arranged to meet Sharpe at an apartment complex in Hampton about 9:00 p.m.
>
> When Sharpe arrived at the apartment complex, appellant and Burrell were standing on the sidewalk. Burrell walked toward the driver's side of Sharpe's van, pulled out a gun, and started shooting. Sharpe moved to the rear of his van. Appellant opened the passenger side door and shot Sharpe. Burrell opened the driver's side door and shot his gun into the van before entering the van and rifling Sharpe's pockets, removing $30 to $40 in cash. Appellant remained outside the van holding his gun on Sharpe. Appellant and Burrell then fled. Sharpe was shot eleven times and suffered significant injuries to his jaw, throat, groin, and abdomen.
>
> Appellant testified that he had not committed the offenses, but he acknowledged he knew Burrell as "an associate." Appellant said he had not introduced Burrell to Sharpe and that he had last sold Sharpe marijuana "months prior." Appellant presented an alibi defense that he had been with his girlfriend, with whom he had a child, when the offenses occurred. His girlfriend and her brother's girlfriend

2

testified to corroborate the alibi; but, as the trial court observed, much of their testimony pertained to "things which occurred before 9:00 [in] the evening" on January 13, 2016.

Alston, Record No. 0134-17-1 at 46-47.

The court also found that the trial judge did not err in accepting the victim's testimony identifying Alston as a perpetrator. After recognizing that identification testimony is evaluated under the totality of the circumstances, the court pointed to the evidence showing that the victim "had known [Alston] for more than a year, saw him clearly at the crime scene, and identified him in the photo array," and that even though the victim was a convicted felon, the trial court found his testimony credible. Id. at 48. The court also observed that the trial judge had not found Alston's alibi persuasive because it addressed matters that happened before 9:00 p.m., which is when the victim testified he met Alston and the other preparator. Id. at 47, 48.

On July 23, 2018, the Supreme Court of Virginia refused Alston's petition for appeal. Alston v. Commonwealth, Record No. 171742. That petition challenged the sufficiency of the evidence. Id. at 19. Alston did not file a petition for a writ of habeas corpus in state court. [Dkt. No. 1 at 3].

## II. Post-Conviction Procedural History

On or about July 22, 2019 [Dkt. No. 1 at 16], Alston filed a pro se federal habeas corpus petition, pursuant to 28 U.S.C § 2254.[1] In his petition, Alston raises the following claims:

1. The victim gave false testimony at the preliminary hearing concerning Alston's physical appearance.
2. Petitioner's trial counsel was ineffective because:
    A. Counsel failed to provide Alston with a copy of his sentencing

---

[1] Alston's convictions became final on October 22, 2018, 90 days after the Supreme Court of Virginia refused his petition for appeal on July 23, 2018. Thus, the federal statute of limitations would have expired October 22, 2019. Because Alston filed his federal habeas petition on July 22, 2019, his petition was timely filed.

3

          guidelines.

    B.    Counsel made no opening statement.

    C.    Counsel did not call all available witnesses, including Tisha Hill.

    D.    Counsel failed to make any objections.

    E.    Counsel failed to investigate Alston's alibi defense that he was at a restaurant at the time of the shooting, including interviewing restaurant staff and reviewing surveillance footage.

    F.    Counsel failed to challenge "suggestive identification procedures."

    G.    Counsel failed to obtain an expert witness on the issue of the reliability of eyewitness identifications.

3.    The trial court judge was "biased and prejudiced" against Alston, committed extrinsic fraud, and made biased statements from the bench.

4.    Claims of Prosecutorial Misconduct

    A.    The prosecutor "committed fraud in the indictment," including "extrinsic fraud by hiding facts," constructive fraud" and "criminal fraud."

    B.    The prosecutor never provided any discovery.

    C.    The prosecutor violated Alston's due process rights by "using photo's [sic] taken day before trial and inferring that these photo's [sic] represented what [Alston] looked like at the time the crime was committed."

    D.    The prosecutor "[m]ade use of a biased and suggestive photo spread."

    E.    The prosecutor "improperly prepped witnesses prior to trial and led them through their staged testimony."

    F.    The prosecutor "[k]nowingly permitted the detective to lie about [Alston]."

    G.    The prosecutor obtained money under false pretenses.

    H.    The prosecutor violated Virginia Code § 18.2-498.3.

    I.    The prosecutor failed to investigate and or present evidence of Alston's alibi defense.

5.    Petitioner's appellate counsel was ineffective because he failed to return Alston's phone calls, refused to "make use of any of the materials Mr. Alston had sent him," and did not allow any input from Alston.

### III. Exhaustion and Procedural Default

Before bringing a federal habeas petition, state prisoners must first exhaust their claims in the appropriate state court. Failure to exhaust all claims requires dismissal of the claims to allow the petitioner to first present his claims to the appropriate state courts. See 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129, 134 (1987). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, Alston must first have presented the same factual and legal claims raised in his federal action to the Supreme Court of Virginia on direct appeal, or in a state habeas corpus petition. See, e.g., Duncan v. Henry, 513 U.S. 364, 365 (1995).

Exhaustion is a matter of comity to the state courts, and failure to exhaust requires dismissal from federal court so that Alston may present his claims to the state courts. See Granberry, 481 U.S. at 134; Rose v. Lundy, 455 U.S. 509, 515-19 (1982); 28 U.S.C. § 2254(b). Generally, a federal habeas petition containing unexhausted claims will be dismissed without prejudice to allow for further state court review. See Rose, 455 U.S. at 522. If state law would bar further state court review, then federal habeas review of the unexhausted claim is procedurally barred. See Bassette v. Thompson, 915 F.2d 932, 935-37 (4th Cir. 1990).

In the instant case, Alston failed to raise any of his federal habeas claims on direct appeal, and he did not file a state habeas petition. Therefore, he has failed to fully exhaust his federal habeas claims. This does not mark the end of the exhaustion analysis because a claim that has not been presented to the highest state court may be treated as exhausted if the claim would now be procedurally barred under state law. Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)). "However, the procedural bar that gives

5

rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." Id. at 288 (quoting Gray, 518 U.S. at 162).

The Respondent asserts that all the claims in the federal habeas petition are exhausted and defaulted because Alston did not raise any of his claims at trial, on direct appeal, or in a state habeas petition. [Dkt. No. 13 at 5-8]. Respondent acknowledges that cause and prejudice, as well as a claim of actual innocence or a miscarriage of justice can excuse a default. [Id. at 8-9].

After respondent raised the issue of exhaustion in his Motion to Dismiss, Alston replied to the Motion to Dismiss. In his reply, Alston primarily cites caselaw and legal principles, but does not apply them to the facts and posture of his case. In an affidavit he submitted as part of his response, Alston reiterates his claim of actual innocence on the grounds that he was not present at the incident scene, that there was a lack of any physical evidence linking him to the crime, and that the victim's identification of him was not reliable. Most of these issues were also raised at trial, and on appeal as part of his insufficient evidence argument. [Dkt. No. 18-1]. Despite the Respondent's discussion of cause and prejudice as well as a miscarriage of justice and the standard for an actual innocence claim, Alston has not attempted to establish either cause or prejudice, a miscarriage of justice, or to identify any new evidence unavailable at trial to support his claim of actual innocence.[2]

---

[2] The Supreme Court held in McQuiggin v. Perkins, 569 U.S. 383, 392 (2013), that a convincing claim of actual innocence "may allow a prisoner to pursue his constitutional claims ... on the merits notwithstanding the existence of a procedural bar to relief." The exception applies only in a "severely confined category" – that is, cases in which reliable *new evidence* shows that "it is more likely than not that 'no reasonable juror' would have convicted" the petitioner had the evidence been available at trial. Id. (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). Here, Alston has presented no new evidence to establish his claim of actual innocence; instead, he reiterated various allegations of which he was aware at the time of trial. [Dkt. No. 18-1 at 2-6]. Thus, his arguments would not satisfy the rigorous requirements of Schlup and McQuiggin, and do not suffice to allow federal review of his procedurally defaulted claims. See Sparrow v. Dir.,

6

In addition to specific defaults, if any of the claims Alston has raised in his federal petition were dismissed to allow Alston to raise them by way of a collateral proceeding, such as a state habeas petition, those claims would be barred by the state statute of limitations, Va. Code § 8.01-654(A), which provides that a state habeas petition challenging a criminal conviction or sentence "shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." The final order in the circuit court was entered on January 17, 2017, and the order dismissing his petition for appeal in the Supreme Court of Virginia was entered on July 23. 2018. Accordingly, a state habeas petition had to be filed no later than July 23, 2019. Consequently, any claims raised in a state habeas petition would now be barred. See, e.g., Sparrow, 439 F. Supp. 2d at 587-88 (finding Virginia habeas statute of limitations, § 8.01-654(A) (2), would bar consideration of unexhausted ineffective assistance of counsel claims which precludes merits review in federal court).

Claims 1, 3, and 4 respectively allege errors that allegedly occurred at the preliminary hearing, at trial (alleged bias of the trial judge), and before and during trial (alleged improper conduct on the part of the prosecutor). If the Court were to dismiss these three claims and their subparts to allow Alston to raise them in a state habeas petition, each would be barred from consideration under the rule of Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974). The Fourth Circuit has recognized that "the procedural default rule set forth in Slayton constitutes an adequate and independent state law ground for decision," Mu'Min v. Pruett, 125 F.3d 192, 196 (4th Cir. 1997), and that "Virginia courts regularly apply the Slayton default rule to federal

---

Dep't of Corr., 439 F. Supp. 2d 584, 588-89 (E.D. Va. 2006) (rejecting fundamental miscarriage of justice argument when petitioner "introduce[d] nothing new, but present[ed] instead a selective version of the facts and omit[ted] those facts belying his actual innocence claim").

7

constitutional claims that could have been, but were not, raised on direct appeal." Id. at 197. Because claims 1, 3, and 4 are each exhausted and defaulted, they are barred from federal habeas review, and will, therefore, be dismissed.

Claims 2 and 5 respectively raise allegations of ineffective assistance of trial and appellate counsel, which Alston has not raised in state court. As discussed above, all of Alston's ineffective assistance of counsel claims are exhausted and defaulted for purposes of federal habeas review because if he attempted to raise them in a state habeas proceeding, they would be barred by the state statute of limitations. Therefore, claims 2 and 5 are exhausted and defaulted and would be barred from federal habeas review, unless the "narrow" exception recognized in Martinez v. Ryan, 566 U.S. 1 (2012), applied. That exception allows a federal court to excuse a state default to consider claims of ineffective assistance of trial counsel. Respondent argues that this exception does not apply to Alston's claims because he, unlike Martinez, failed to seek state habeas corpus relief, instead proceeding directly to federal court after his direct appeal concluded. See Walton v. Ray, No. 3:17CV474, 2018 U.S. Dist. LEXIS 99471, at *6 (E.D. Va. June 13, 2018) (citing Jones v. Pa. Bd. of Prob. & Parole, 492 F. App'x 242, 246-47 (3d Cir. 2012) for the principle that Martinez analysis is inapplicable where the criminal defendant did not initiate any state collateral review proceeding), appeal dismissed, No. 18-6830, 744 F. App'x 828 (4th Cir. Dec. 11, 2018).; Pullen v. Dir., Va. Dep't of Corr., No. 7:14CV00211, 2015 U.S. Dist. LEXIS 3445, at *3 (W.D. Va. Jan. 13, 2015) (same), appeal dismissed, No. 15-6147, 604 Fed. App'x. 284, 2015 U.S. App. LEXIS 8513 (4th Cir. May 22, 2015); Anderson v. Clarke, No. 2:13-CV-223, 2014 U.S. Dist. LEXIS 40371, at *5 (E.D. Va. Mar. 24, 2014) (same). In addition, a majority of the federal circuits have also "found that the explicit language of Martinez applies to a prisoner's default of a claim of ineffective assistance of *trial counsel only*." See

8

Gaither v. Zook, Civil Action No. 3:16CV64, 2017 U.S. Dist. LEXIS 20596, *9 (E.D. Va. Jan. 18, 2017) (emphasis added) (collecting cases).

As the following discussion of the merits of Alston's claims shows, even if the Martinez exception were applicable to Alston's ineffective assistance of counsel claims, he fails to overcome the default of these claims because "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective- assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 566 U.S. at 14. None of Alston's claims of ineffective assistance of counsel have merit.

### IV. Discussion of the Merits

To establish ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defendant." Strickland v. Washington, 466 U.S. 668, 687 (1984). Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (stating that a reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (opining that a court must "presume that challenged acts are likely the result of sound trial strategy."). The two prongs of the Strickland test are "separate and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice." Id. at 233. Therefore, a court need not review the reasonableness of counsel's performance if a petitioner fails to show prejudice. Quesinberry v. Taylor, 162 F.3d 273, 278 (4th Cir. 1998).

In claim (A)(1), Alston alleges his attorney was ineffective because he failed to give

9

Alston a copy of the sentencing guidelines. The record establishes that before the sentencing hearing, counsel went over the presentence report, which included the sentencing guidelines, with Alston. (1/17/1 Tr. at 3-4). The guidelines were also discussed during Alston's sentencing hearing before the sentence was announced. In that hearing, trial counsel asked the court to sentence Alston to eight years' imprisonment, which was at the low end of the guidelines. (Id. at 10, 12-13). Alston does not provide any argument as to how he was prejudiced, assuming he was not given a copy of the sentencing guidelines, nor does he explain why his attorney's alleged failure to give him a copy of the guidelines was unreasonable given that the guidelines are wholly discretionary in Virginia and cannot form the basis of an assignment of error on appeal unless a defendant is sentenced outside the limits of the range established by the legislature, which Alston does not allege. For these reasons, this claim fails.

In claim (A)(2), Alston alleges that his attorney was ineffective because he made no opening statement. Both the prosecutor and trial counsel waived opening statements. The purpose of an opening statement is to educate the trier of fact about the party's theory of the case. From the trial judge's comments at the end of the Commonwealth's case-in-chief, it is clear that he understood that defendant's theory of the case focused on whether Alston was one of the persons who participated in the crime. These comments establish that Alston suffered no prejudice from his counsel's decision to waive opening statement.

Moreover, "[d]efense counsel's failure to make an opening statement was nothing more than a tactical decision that did not adversely affect [the defendant]." Nguyen v. Reynolds, 131 F.3d 1340, 1350 (10th Cir. 1997) (citing United States v. Haddock, 12 F.3d 950, 955 (10th Cir. 1993) (failure to present opening statement itself is not ineffective assistance of counsel); United States v. Miller, 907 F.2d 994, 1000 (10th Cir. 1990) (strategic decision to eschew opening

10

statement, without more, does not constitute ineffective assistance of counsel)). Because Alston has not established either that counsel's tactical decision was unreasonable or that he suffered any prejudice from counsel's waiving an opening statement, this claim fails.

In claim (A)(3), Alston alleges his attorney was ineffective because he "did not call any of the available witnesses including [his] sister Tisha Hill to the stand." [Dkt. No. 18-1 at 7]. The claim itself is disproved by the record. Trial counsel called two witnesses to corroborate Alston's testimony regarding his alibi: his girlfriend Denise Ferguson and her friend Ashani Wellons. Ferguson testified that she and Alston left an Outback restaurant at about 8:30 p.m., went straight to her mother's house, picked up their child, and went home where they remained all night. (11/2/16 Tr. at 73-77). Wellons, Ferguson's friend, testified that she baby-sat for Ferguson on January 13, 2016, and corroborated Ferguson's statement that she and Alston picked up their child at Ferguson's mother's house at about 8:45 p.m. to 9:00 p.m. that evening. (Id. at 86-87). The victim had testified that he was robbed and shot in the 9:00 to 9:30 p.m. range. (Id. at 39).

It is apparent from the record that the trial strategy pursued by counsel was to contradict the victim's identification of Alston by providing an alibi which contradicted the victim claiming that defendant was involved in the assault and by attacking the victim's credibility, which counsel did by pointing out inconsistencies and changes in his statements, the use of pictures of Alston with different hairstyles, the victim's having a record of being convicted of several felonies (robbery, possession with intent to distribute, breaking and entering, grand larceny, and threatening by letter), and by pointing out that it was dark when the victim was attacked and emphasizing that the victim admitted being shot in the face, which affected his vision. (Id. at 39-41). Counsel's decision not to call Alston's sister "Tisha Hill," was not unreasonable.

Alston has not made a proper proffer of Hill's alleged testimony and without such a proffer, he can never prove prejudice. See Bassette, 915 F.2d at 940-41 (petitioner must proffer the identification of potential witnesses and their specific testimony that allegedly would have been favorable); see also Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."). Moreover, choosing which witness to call is a classical example of trial strategy for which an attorney has broad discretion. See United States v. Chapman, 593 F.3d 365, 369 (4th Cir. 2010) (explaining that the "decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney") (quoting Boyle v. McKune, 544 F.3d 1132, 1139 (10th Cir. 2008)); see also Phoenix v. Matesanz, 233 F.3d 77, 81-83 (1st Cir. 2000) (recognizing that defense counsel's decision whether to call a particular witness is almost always strategic and observing that "'strategic choices . . . are virtually unchallengeable'" (quoting Strickland, 466 U.S. at 690) Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."); United States v. Toms, 396 F.3d 427, 435 (D.C. Cir. 2005) (where counsel had already called two witnesses, "no reason counsel should be thought to have performed deficiently simply because he did not call a third") (citing United States v. Smith, 198 F.3d 377, 386 (2d Cir. 1999) ("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial.")). Trial counsel called two witnesses to corroborate Alston's alibi defense, and Alston fails to identify what non-cumulative evidence any other witness would have provided. For these reasons, this claim fails.

In claim (A)(4), Alston alleges his attorney was ineffective because he did not object to the prosecutor's case and refused to examine the prosecution's witnesses. [Dkt. No. 18-1 at 7]. This claim is disproved by the record. Trial counsel pursued a strategy of challenging the victim's identification of Alston as a perpetrator. As trial counsel explained in answering a question from the trial judge, he was not contesting the shooting, the robbery, and the pictures of the van and the crime scene, because the defense's position was that Alston was not there. (11/2/16 Tr. at 66-67). Counsel did not object to that evidence because it was irrelevant to the defense. Whether to object is a tactical decision, and Alston has not identified any objection that his counsel should have made at trial. Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998) ("Decisions that may be made without the defendant's consent primarily involve trial strategy and tactics, such as what evidence should be introduced, what stipulations should be made, *what objections should be raised*, and what pre-trial motions should be filed.") (emphasis added); see also Harrington v. Richter, 562 U.S. 86, 109 (2011) ("There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'").

Furthermore, contrary to Alston's claim, his counsel did cross-examine several of the prosecution's witnesses (11/2/16 at 39, 49, 59), and challenged the entirety of the prosecution's case by making a motion to strike. (Id. at 67-71, 98-99). See United States v. Hawkins, 531 Fed. Appx. 342, 345 (2013), 2013 U.S. App. LEXIS 13322, *5-6 ("Conclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel.") (citing United States v. Demik, 489 F.3d 644, 646 (5th Cir. 2007) (alterations omitted); United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994)); see also Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) (habeas petitioner cannot rely upon conclusory allegations of ineffective assistance of counsel

and must specifically show "how these alleged errors and omissions were constitutionally deficient, and how they prejudiced his right to a fair trial"). For these reasons, this claim fails.

In claim (A)(5), Alston alleges his attorney was ineffective by not investigating his alibi defense and not obtaining a copy of the surveillance video from the Outback restaurant. The claim is frivolous. Trial counsel clearly investigated Alston's alibi defense because he presented it through the witnesses he called to testify. As for the video, Alston has admitted that he never saw it and therefore has no way of knowing how it might have furthered his defense. Moreover, counsel called as a witness Alston's girlfriend, Ferguson, who testified that she and Alston left the restaurant about 8:30 p.m., picked up their child, and then went home where they spent the rest of the evening, and called Wellons who placed Alston at Ferguson's mother's house at about 8:45 p.m. The victim testified that the attack happened between 9:00 p.m. and 9:30 p.m. If a videotape had shown Alston leaving the restaurant at a different time, it could have undermined his alibi witnesses.[3] For these reasons, this claim fails.

In claim (A)(6), Alston alleges that his attorney was ineffective for failing to challenge what he describes as "suggestive identification procedures." This claim fails because Alston does not identify any specific suggestive identification procedure counsel should have attacked.[4] Moreover, Alston admitted at trial and in his response to the motion to dismiss that he and the victim knew each other. [Dkt. No. 18-1 at 4; the victim knew "what I looked like"]; (11/2/16 Tr. at 95-96). See United States v. Burgos, 55 F.3d 933, 942-43 (4th Cir. 1995) (finding in-court

---

[3] In his response to the motion to dismiss Alston states the video would have shown he was at the restaurant at the time of the offense. [18-1 at 2]. That statement conflicts with his alibi witnesses who had him leaving at 8:30 and picking up his child at 8:45. Alston testified in his own defense at trial and he never contradicted the time line established by Ferguson and Wellons. Indeed, he testified he was with Ferguson "all day." (11/2/16 Tr. at 92). .

[4] The judge reviewed the photo-lineup and found that each of the photos were "very similar" except for one who had a somewhat fuller face. (11/2/16 Tr. at 64).

identifications were properly admitted based on the fact that the witnesses had an "independent origin" upon which to base their identifications because they knew the defendant personally prior to the photo-lineup; every indication is that the witnesses could have identified the defendant "just as easily had they not seen the photographs") (citing United States v. Wade, 388 U.S. 218, 242 (1967)). Alston's counsel was not ineffective for using cross-examination and the introduction of other evidence to challenge the victim's credibility in identifying Alston as one of the perpetrators instead of focusing on a photo-lineup that was of less import given that Alston acknowledged that he and the victim knew each other.

The defense at trial was to discredit the victim's identification of Alston as one of the assailants and to rely on the alibi defense. In pursuing that defense, even if Alston had named a specific objection that counsel should have raised, it was not unreasonable for counsel to choose not to focus on a photo-lineup when his client was still going to testify and admit having known the victim before the offense. See, e.g., Rangel v. United States, Civil Action No. 1:13CV50, 2013 U.S. Dist. LEXIS 110677 (E.D. Va. Aug. 2, 2013) (counsel not ineffective for not challenging in-court identification of petitioner where one witness had known petitioner for several years and the other, a police office, had met petitioner when he executed a search warrant); Gray v. Booker, Case No. 03-CV-71658, 2012 U.S. Dist. LEXIS 142312, *46 (E.D. Mich. Oct. 2, 2012) (where witness had known defendant for some time, decision to attack witness's credibility "through cross-examination, rather than to object to the in-court identification, was a reasonable trial strategy that defeats petitioner's ineffective assistance of counsel claim.").

Counsel has "full authority to manage the conduct of the trial," Taylor v. Illinois, 484 U.S. 400, 418 (1988), and "need not raise every possible claim to meet the constitutional

15

standard of effectiveness," United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014). Counsel is "permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success," id., and "is not ineffective merely because he overlooks one strategy while vigilantly pursuing another." Williams v. Kelly, 816 F.2d 939, 950 (4th Cir. 1987); Sallie v. North Carolina, 587 F.2d 636, 640 (4th Cir. 1978) (Strickland and its progeny were "not intended to promote judicial second-guessing on questions of strategy as basic as the handling of a witness."). During Alston's trial, his counsel appropriately attacked the victim's credibility and presented Alston's alibi defense. Therefore, this claim fails.

In claim (A)(7), Alston alleges that trial counsel was ineffective in not obtaining an expert to testify about eye witness identification. Alston has not named an expert or provided a proper proffer of what an expert witness would have testified to in his case. See Bassette, 915 F.2d at 940-41 (petitioner must proffer the identification of potential witnesses and their specific testimony that allegedly would have been favorable); see also Beaver, 93 F.3d at 1195 ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."). Moreover, trial counsel attacked the victim's identification of Alston by pointing to differences in the victim's characterization about the length and style of Alston's hair and how Ferguson described defendant's hair and the various photographs to bolster that point. He also stressed that the assault occurred when it was dark; that the victim was shot in the face and admitted the injury impaired his vision; and he presented two alibi witnesses (11/2/16 Tr. at 98-100). In sum, trial counsel presented evidence to draw into question the victim's identification of Alston and emphasized several points to that end in his argument to the trial judge, who was the trier of fact. For these reasons, this claim fails.

Lastly, Alston alleges his appellate counsel was ineffective because he did not return his

calls and did not make use of the materials Alston sent him. The Fourth Circuit's rule for ineffective assistance of appellate counsel is the same as for trial counsel. See Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000). Appellate counsel is to "examine the record with a view to selecting the most promising issues for review." Id. (quoting Jones v. Barnes, 463 U.S. 745, 752 (1983) (internal quotation marks omitted)). When testing claims of ineffective assistance of appellate counsel, reviewing courts must grant counsel the "presumption that he decided which issues were most likely to afford relief on appeal." Id. (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993)). Generally, a petitioner can only overcome the presumption of effective assistance of appellate counsel "when ignored issues are clearly stronger than those presented...." Smith v. Robbins, 528 U.S. 259, 288 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986) (internal quotations omitted)). Alston has not identified any issue that appellate counsel should have presented that were not presented. Accordingly, Alston establishes neither deficient performance nor resulting prejudice, and this claim fails. See Bell, 236 F.3d at 164.

## V. Conclusion

For the reasons stated above, the Respondent's motion to dismiss [Dkt. No. 11] will be granted, and a certificate of appealability will be denied because Alston has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This petition will be dismissed with prejudice through an Order that will be issued with this Memorandum Opinion.

Entered this 8 day of May 2020.

/s/ 
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia